Priority ✓
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. SACV 00-0745 DOC (ANx)　　　　　　　　　　　Date: June 13, 2002

Title: In re MTI Technology Corp. Securities Litigation II

---

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
　　　　　　　　　　　　　　　　　　　　　　　Date:_____ Deputy Clerk:_____

PRESENT:
　　　　　　　　THE HONORABLE DAVID O. CARTER, JUDGE

　Kristee Hopkins　　　　　　　　　　　Not Present
　Courtroom Clerk　　　　　　　　　　　Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:　ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT　　　　　　　　　　　　NONE PRESENT

---

PROCEEDING (IN CHAMBERS):　　GRANTING MOTION FOR REVIEW AND RECONSIDERATION OF MAGISTRATE JUDGE'S ORDER COMPELLING DISCOVERY

Before the Court is Plaintiffs' motion for review and reconsideration of Magistrate Judge Arthur Nakazato's order compelling discovery. The Court finds that the matter is appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After reviewing the moving, opposing and replying papers, and for the reasons set forth below, the Court GRANTS the motion.

## I.　BACKGROUND

This is a class action brought by shareholders of Defendant MTI Technology Corporation for violation of the Securities Exchange Act of 1934. *See* 15 U.S.C. §§ 78j(b), 78t(a). The original complaint in this action was filed on July 31, 2000. Subsequently, various shareholder actions were consolidated, a class of shareholders was certified and a consolidated complaint filed in December 2000. Defendants brought a motion to dismiss which was granted on March 27, 2001 with leave to amend. The First Amended Consolidated Complaint (FACC) was then filed with Defendants again

MINUTES FORM 11 DOC　　　　　　　Initials of Deputy Clerk ___
CIVIL - GEN　　　　　　　　　　　　　　　　　　　　Page 1 of 7

responding with a motion to dismiss. This motion was denied but Plaintiffs were granted leave to file a Second Amended Consolidated Complaint (SACC) in order to add newly discovered supporting evidence. This is the operative complaint at this time.

Both of Defendants' motions to dismiss were predicated on the argument that Plaintiffs failed to satisfy the stringent pleading standards of the Private Securities Litigation Reform Act of 1995 (PSLRA). 15 U.S.C. § 78u-4. The PSLRA governs allegations for violations of the Securities Exchange Act and requires that Plaintiffs "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiffs must also "state with particularity all facts on which their belief is based." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999) (citing to the PSLRA). It is this standard that has contributed to the current discovery dispute before the Court.

The FACC and the SACC both refer to six former employees of MTI (designated EE1-EE6). These former employees are not named, although some identifying characteristics regarding their prior positions within the corporation are mentioned. (*See, e.g.,* SACC ¶ 73(e) ("According to EE4 who is knowledgeable about MTI's accounts ....").) The paragraphs incorporating the six informants were added to satisfy the PSLRA and the standard of *Silicon Graphics*. The information regarding the former employees adds details and credibility regarding the more general allegations of Defendants' misconduct. Reference to the employees, their job positions, and their specific observations states with particularity the facts upon which the general allegations are based. (*See, e.g.,* SACC 73(b) ("According to EE6, a former employee, some of MTI's products were intentionally produced without serial numbers so they could not be tracked.").)

During the course of discovery, Defendants propounded Special Interrogatory 1 requesting Plaintiffs to "identify, respectively, EE1 through EE6, as referenced in the Second Amended Complaint." As part of its Rule 26 initial disclosures, Plaintiffs produced a list of 71 "former or present employees, officers and directors who may have discoverable information." Plaintiffs, however, refused to specifically identify the six former employees referenced in the SACC, stating simply that they are among the 71 individuals identified in their Rule 26 disclosures. Defendants brought a motion to compel identification of EE1 through EE6 in front of the Honorable Arthur Nakazato. Plaintiffs opposed, claiming the protection of the work product rule and the need to protect the confidential informants. Magistrate Judge Nakazato granted the motion to compel and Plaintiffs have brought the instant motion before this Court to reconsider the magistrate judge's order. (*See* Apr. 5, 2002 Order.)

## II. LEGAL STANDARD

Plaintiffs bring the current motion to reverse the magistrate judge's April 5, 2002 order compelling discovery. Pursuant to Local Rule (Chapter V) Governing Duties of Magistrate Judges 3.3, within ten days of service of a written ruling by a magistrate judge an aggrieved party "may file ... and serve a motion for review and reconsideration before the district judge to whom the case is assigned, specifically designating the portions of the decision objected to and specifying wherein such portions

of the decision are clearly erroneous or contrary to law, with points and authorities in support thereof." This Local Rule implements Federal Rule of Civil Procedure 72(a), which provides that "a party may serve and file objections" to a magistrate judge's order within ten days of being served with it, and 28 U.S.C. § 636(b)(1), which provides that a district judge "may reconsider any pretrial matter [ruled on by a magistrate judge] . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Therefore, the standard applied in a review of a discovery matter, such as the one at issue, is the "clearly erroneous or contrary to law" standard. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (noting that the proper standard for review of discovery orders is the "clearly erroneous or contrary to law" standard).

The "clearly erroneous" standard applies to the magistrate judge's factual determinations. *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 748 (9th Cir. 1990). Under this standard, the district court should overturn the magistrate judge's ruling only when the district court is "left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constrs. Laborers Pension Trust*, 508 U.S. 602, 622, 113 S. Ct. 2264, 2279 (1993). The "contrary to law" standard applies to the magistrate judge's legal conclusions. *Haines*, 975 F.2d at 91 ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law."). A contrary to law review amounts to a *de novo* review of the magistrate judge's legal conclusions. *See United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir.1984) (en banc) ("Questions of law are reviewed under the non-deferential, de novo standard."), *abrogated on other grounds by Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541 (1988).

## III. DISCUSSION

The work product doctrine--protecting trial preparation materials that reveal an attorney's strategy, evaluation and investigation--is well-established under federal law. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-94 (1947). The doctrine provides only a qualified protection from discovery; disclosure may be required if the party seeking discovery shows a substantial need of the materials and that it is unable to obtain the equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); *see also Hickman*, 329 U.S. at 511-12, 67 S. Ct. at 394. This standard applies to nonparty witness statements, for instance. Fed. R. Civ. P. 26(b)(3).

Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected,[1] the identity of witnesses interviewed by opposing counsel is protected. *Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 154 (D. Mass. 1986); *Laxalt v. McClatchy*, 116 F.R.D. 438, 443 (D. Nev. 1987); *see also McIntyre v. Main St. & Main Inc.*, 2000 WL 33117274, at *2 (N.D. Cal. Sept. 29, 2000). The rationale behind this distinction is that if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. *See Laxalt*, 116 F.R.D. at 443.

---

[1] Fed. R. Civ. P. 26(b)(1)

Such evaluations, impressions, and strategy are at the heart of the work product rule. The identity of witnesses is subject to qualified protection and thus opposing counsel may obtain disclosure based upon the requisite showing of need and undue hardship. *See Am. Floral Servs., Inc. v. Florists' Transworld Delivery*, 107 F.R.D. 258, 260 (N.D. Ill. 1985).

In one district court case, for instance, defendants sought "the identity of witnesses known to [the government] with knowledge of facts underlying the allegations in the Supplemental Complaint." *United States v. Dist. Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of Am.*, No. 90 CIV 5722, 1992 WL 208284, at *4 (S.D.N.Y. Aug. 18, 1992). The court declined to order disclosure stating:

> *[T]he identity of people mentioned in the Supplemental Complaint to whom [the governmental agent] spoke*, and the substance of her conversations, also constitute work product. How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. Disclosure of this information would inevitably teach defendants which individuals the Government considered more or less valuable as witnesses and how it was preparing for trial.

1992 WL 208284, at *10 (emphasis added). Pointing to defendants' access to the universe of individuals with information relevant to the issues in the case, the court additionally found that defendants had not shown the requisite need to overcome qualified protection. *Id.*

This Court finds that the identity of the former employees mentioned in the SACC includes work product content. This finding is made in light of the established law concluding that there is work product in the identity of witnesses interviewed or otherwise relied upon by plaintiffs. Reaching an opposite conclusion on a similar issue, however, *In re Aetna Inc. Securities Litigation*[2] held that the identity of persons described in an amended complaint is not work product or, at the most, has limited work product content. No. CIV.A.MDL.1219, 1999 WL 354527, at *2-3 (E.D. Pa. May 26, 1999). The court further found that even if work product, then "the need for disclosure of the information outweighs the minimal work product content of the information." 1999 WL 354527, at *4. In that case, plaintiffs' Rule 26 disclosures included a list of 750 individuals with knowledge of discoverable material and, for example, listed over 200 individuals with knowledge of a single paragraph of the amended complaint. *Id.* at *1. While acknowledging the analogous situation presented in *Aetna*, this Court finds the *Aetna* court's rationale for discounting any potential work product content unpersuasive for numerous reasons and declines to follow the district court opinion.

---

[2] Defendants stress this decision and the magistrate judge relied upon the case in finding that disclosure is required. Thus, it is necessary to examine the case closely in this Order.

First, *Aetna* followed a Third Circuit case finding that a list of witnesses identified by counsel had only minimal work product content but did not point to any cases finding no work product value in the identity of witnesses. *Aetna*, 1999 WL 354527, at *2-3 (citing *United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir. 1980). The Third Circuit case identified several factors for consideration in a work product analysis and found that, in the particular circumstances presented, no policy reasons existed for protection of the work product. *Amerada Hess*, 619 F.2d at 987-88 (pointing to the extent the information reveals counsel's mental processes, the likely reliability of its reflection of witness' statements, the possibility it will convert counsel into a witness, and the degree of availability of the information from other sources). Applying some of these same factors, the *Aetna* court concluded that the disclosure of names and addresses of those individuals interviewed by counsel would not reveal "mental impressions, conclusions, opinions or legal theories" of plaintiff's attorneys and thus there was no work product value. This Court disagrees. This is not a mere list of interviewees, but the identification of individuals that are linked to very specific factual contentions in the SACC. Disclosure of their identity would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future factual statements by the witnesses with Plaintiffs' counsel's legal theories and conclusions as outlined in the complaint.

Second, the *Aetna* court stressed that the plaintiffs named 750 individuals and, without the court's intervention, that "[d]efendants would be forced to engage in a time-consuming and expensive effort to ferret out the veritable needle in the haystack." 1999 WL 354527, at *4. Thus, the court found that the defendants had made a showing of need sufficient to override the limited work product protection. *Id.* Here, Plaintiffs have provided a list of 71 names that includes current and former employees. This is not even close to the unmanageable number present in *Aetna* and it provides a limited universe for Defendants to conduct discovery. Additionally, all 71 individuals are, or were, employees of Defendant MTI and thus Defendants are in the best position to know what type of information each individual may possess. Defendants have not shown that there is either a substantial need for the particular information sought, beyond reducing their investigative costs by riding on Plaintiffs' coattails, or that they will face an undue hardship without Plaintiffs' identification of the six former MTI employees.[3]

Third, the *Aetna* court noted that its holding was "consistent with the policy considerations underlying" the PSLRA. 1999 WL 354527, at *4. The PSLRA's involvement in this issue cannot be ignored as it was undoubtedly the strict requirements of the PSLRA, and subsequent case law, that caused Plaintiffs to include mention of specific former employees in the complaint. Yet, this Court does not believe that requiring disclosure at the discovery stage furthers the goals of the

---

[3] Although the magistrate judge found the *Aetna* analysis applicable, the court did not make any specific factual findings regarding Defendants' showing of need or undue hardship. Thus, this Court's finding in this area does not contravene the "clearly erroneous" standard that applies to a review of the magistrate judge's factual findings.

PSLRA. Although the PSLRA has a tangential effect upon discrete discovery rules, *see, e.g., Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 327 (9th Cir. 1996) (noting that 15 U.S.C. § 78u-4(b)(3)(B) impacts the timing of initial disclosures under Rule 26(b)(1) by providing for a stay of discovery during pendency of a motion to dismiss brought pursuant to the PSLRA), its primary impact is upon the pleading standards in private securities fraud cases, *see generally* 15 U.S.C. § 78u-4(b). Congress may have sought to reduce discovery costs, but the tool it selected was a heightened pleading standard--limiting the number of complaints alleging securities fraud that make it to the discovery stage--and not a revision of the discovery rules themselves. *See SG Cowen Secs. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d 909, 911-13 (9th Cir. 1999). After all, discovery is only stayed until plaintiffs have met the requisite pleading requirements and then the parties proceed as in any other case. *See id.*; 15 U.S.C. § 78u-4(b)(3)(B).

Neither the court in *Aetna* nor the Defendants in this case have pointed to a persuasive reason why the PSLRA should be interpreted to alter the traditional discovery dynamics in this adversary system. Although Defendants reference *Silicon Graphics* for support, it merely requires that plaintiffs identify their sources of information specifically enough so as to show a credible basis for the complaint's assertions and to meet the PSLRA's particularity standard. *Silicon Graphics*, 183 F.3d at 984 ("[The plaintiff] fails to state facts relating to the internal reports, including their contents, who prepared them, which officers reviewed them and from whom she obtained the information . . . [the] complaint is not sufficiently specific to raise a strong inference of deliberate recklessness. "). The Ninth Circuit case falls far short of imposing a blanket requirement that the identities of confidential informants be disclosed.

Plaintiffs in this case have already passed the PSLRA hurdle by stating their allegations with particularity. This Court will not presume to question the basis for the factual contentions at this stage. The only proper challenge to the sufficiency of the underlying bases for Plaintiffs' complaint allegations would be a motion brought pursuant to Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11(b), (c) (requiring counsel to certify that all factual contentions in pleadings have evidentiary support and allowing a motion for sanctions if opposing counsel believes the allegation is not warranted). Rule 11 serves to keep a plaintiff's allegations in all cases, including PSLRA cases, in check. *See* 15 U.S.C. § 78u-4(c)(2).

Defendants contend that Plaintiffs have waived any right to protect their work product by referring to the former employees in the SACC. Defendants cite to several cases as support but all involve work product information that has been submitted as evidence to the ultimate fact-finder. *See, e.g., United States v. Nobles*, 422 U.S. 225, 238-39, 95 S. Ct. 2160, 2170-71 (1975) (rejecting defendant's work product argument to protect an investigator's report when the investigator served as a witness at trial and the report was used by defendant's counsel to impeach plaintiff's witnesses). The parties in those cases then sought to preclude full disclosure to opposing counsel. *See id.* Here, Plaintiffs simply referenced former employees to provide a credible basis and specific context for allegations that will be proved with admissible evidence at a later date. The fact-finder in this case will not be invited to rely upon the work product information. Thus, Plaintiffs have not waived any work

product protection.

       Finally, there are important public policy concerns implicated by disclosure of former employees acting as informants. Although the whistle-blower privilege is not available in this private suit, that does not lessen the need to consider the practical results of an order requiring disclosure of the employees' identities. The Fifth Circuit generally recognized that former employees acting as informers could face serious consequences if their identities were revealed by plaintiff's counsel. *See Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972). The court noted that although defendant's counsel may ultimately obtain the same information from the former employees without disclosure, including whether they have spoken to plaintiff's counsel, whether the witness is approached as an informant or merely an uninterested witness may have significant consequences. *See Hodgson*, 459 F.2d at 306 (noting that when counsel speaks to a witness, counsel can then ascertain "whether the information was given reluctantly or voluntiarily, whether the tone and manner in which was given it was friendly to the defendant or unfriendly, and whether it was accusatory or favorable."). Thus, there is a legitimate policy concern that militates against requiring disclosure.

       In sum, the magistrate judge's order compelling disclosure of the identities of the former employees referenced in the SACC is contrary to law. Although there is no precedential authority directly on point, the established law regarding the work product doctrine, the particular circumstances of this case, the purpose and reach of the PSLRA, and public policy concerns lead this Court to conclude that disclosure is unwarranted under existing law.

       For the reasons set forth above, the Court GRANTS Plaintiffs' motion for review and reconsideration and reverses the magistrate judge's April 5, 2002 order compelling discovery.

       The Clerk shall serve this minute order on all parties to the action.